**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

Dated: 02:56 PM February 24, 2020

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| AMY E. AHMAD, | ) | CASE NO. 18-61017 |
| | ) | |
| Debtor. | ) | ADV. NO. 19-6015 |
| | ) | |
| LISA M. BARBACCI, TRUSTEE, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| MIRZA N. AHMAD, | ) | **(NOT FOR PUBLICATION)** |
| | ) | |
| Defendant. | ) | |

Before the court are competing motions for summary judgment. Plaintiff, the chapter 7 trustee, seeks turnover of property awarded to Debtor in her 1981 divorce from Defendant. Defendant opposes turnover.

The court has jurisdiction of this proceeding under 28 U.S.C. § 1334(b) and the general order of reference entered by the United States District Court on April 4, 2012. This is a statutorily core proceeding under 28 U.S.C. § 157(b)(2)(E) and the court has authority to issue

1

final entries. Pursuant to 11 U.S.C. § 1409, venue in this court is proper. This memorandum constitutes the court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

The material facts are not disputed. Defendant is Debtor's ex-husband. They divorced in 1981. As part of their property settlement, Debtor was

> granted a lien in the amount of Twenty-five Thousand Dollars ($25,000.00) against the Mirza N. Ahmad, M.D., Inc. stock which will be payable with interest at the rate of eight percent (8%) per annum, compounded annually on the earliest of one of the following conditions:
>
> (a) The dissolution of said corporation;
> (b) The death of the plaintiff-husband;
> (c) The expiration of the plaintiff-husband's obligation to pay either alimony or support.
>
> This lien with interest to the date of payment will be payable by the plaintiff-husband to the defendant-wife as a further distribution of property.

(Compl., Exh. p. 1, ECF No. 1.) Although the third condition triggered Defendant's obligation to pay in 1991, he has not paid anything to Debtor. When Debtor filed bankruptcy, she listed her lien interest in the stock in her petition. Plaintiff-trustee filed a two count complaint to recover the money owed Debtor. She claims Defendant now owes over $200,000.00 with the compounded interest. (Compl. ¶ 7, ECF No. 1.)

## DISCUSSION

Trustee filed a two count complaint. The complaint is titled "Type: Turnover." Count 1 does not recite any specific bankruptcy code provision but it does contain allegations that speak generally to turnover actions. Count two is an action to foreclose on Debtor's lien on the stock.

    **I.    Turnover**

    **A. Section 542(a)**

11 U.S.C. § 542(a) provides:

2

> Except as provided in subjection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). Entitlement to turnover under § 542(a) requires trustee to prove, by a preponderance of the evidence, three elements taken directly from the statute:

> (1) The property is or was in the possession, custody or control of an entity during the pendency of the case, (2) that the property may be used by the trustee in accordance with § 363 or exempted by the debtor under § 522, and (3) that the property has more than inconsequential value or benefit to the estate.

Bailey v. Suhar (In re Bailey), 380 B.R. 486, 490 (B.A.P. 6th Cir. 2008) (citations omitted).

**1. The stock belongs to Defendant subject to a judicial lien in favor of Plaintiff.**

Trustee claims the divorce decree transferred an ownership interest in property to Debtor. The court disagrees. The separation agreement distinctly states that the stock in Defendant's corporation is his property, free and clear, except for a lien in Debtor's favor. There is no evidence that the stock was endorsed, assigned or otherwise subjected to a transfer of ownership. What Debtor became entitled to, under Zimmie v. Zimmie, 464 N.E.2d 142 (Ohio 1984), was $25,000.00, plus interest at 8%, secured by a lien on the stock.

This is materially different from the Dinsio case cited by Trustee. Estate of Dinsio, 823 N.E.2d 43 (Ohio Ct. App. 2004). In Dinsio, the wife was specifically awarded the real estate at issue. Further, the divorce decree ordered the execution of "any and all deeds or certificates of transfer necessary to effectuate [the property transfer] within five days." Id. at 45. Clearly, a transfer of ownership was intended in Dinsio. There is no evidence of the same intent here. The court finds that no ownership interest in the stock transferred to Debtor.

Debtor was given a lien in the stock to secure her property award. Following the reasoning in In re Markunes, 86 B.R. 933 (Bankr. S.D. Ohio 1988), the court finds the stock is imposed with a judicial lien. See also In re Kestella, 269 B.R. 188 (Bankr. S.D. Ohio 2001). Undisputably, the lien is an asset of Debtor's bankruptcy estate.

Now arises a technicality. Defendant owns the stock and Debtor has a lien. Trustee cannot obtain turnover of the stock because it is not property of the Debtor. And she does not need turnover, per se, of the lien because it is property of the estate. Trustee succeeded to Debtor's interest in the lien when Debtor entered bankruptcy. Thus, turnover under §542(a)

3

must fail. Harchar v. U.S. (In re Harchar), 694 F.3d 639 (6th Cir. 2012) (referencing the distinction between § 542(a) and (b)). The court will therefore grant summary judgment in favor of Defendant on a § 542(a) claim.

**B. Section 542(b)**

11 U.S.C. § 542(b) provides:

> (a) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

There is no argument the divorce decree created a debt. Defendant vehemently argues that the debt is not "payable on demand" because the judgment has gone dormant. Under O.R.C. § 2329.07, a judgment goes dormant if action is not taken to collect on the judgment within five years. The parties agree that the condition triggering the obligation to pay occurred in 1991 and Debtor never took collection action. Although a judgment can be revived under the auspices of O.R.C. § 2325.18, there is no dispute that Debtor did not take steps to revive the judgment. If Defendant is correct, Trustee's § 542(b) claim will also fail.

**1. Support orders reduced to fixed sum judgments are subject to dormancy and revivor.**

The authority on whether domestic relations judgments are subject to dormancy and revivor is confusingly obscure. Much of the case law is very dated, and no case offers a thorough analysis or explanation. Further, much of it is specific to alimony or support, not property settlements. And the court is convinced that the decisions that exist were driven less by an understanding of the precedential case law and more by a desire to do equity.

In one of the earlier cases, from 1889, the Hamilton County Court of Common Pleas considered whether a domestic relations order is subject to the dormancy statute, finding "a decree for alimony, being a statutory judgment, and being, in all respects but one, an ordinary judgment at law, it is subject to the limitations imposed on ordinary judgments under [the dormancy statute]." Mullane v. Folger, 10 Ohio Dec.Reprint 485, 487 (Hamilton Cty. Ct. Com. Pl. 1889). The Supreme Court of Ohio subsequently disagreed. Lemert v. Lemert, 74 N.E. 194 (Ohio 1905). "A decree for alimony is not a judgment within the meaning of [the dormancy statute] . . . nor it is it a judgment or finding . . . which provides for the revivor of a dormant judgment." Id. at 195. Since these cases appear specific to alimony, the court hesitates to place full reliance on them.

Regardless, over time, a slight shift occurred. In 1959, the Ohio Supreme Court decided that once a decree for support is reduced to a lump sum judgment, the lump sum judgment is

4

subject to dormancy and revivor. Smith v. Smith, 156 N.E.2d 113 (Ohio 1959). In the context of child support, the court explained that on the date the decree is issued, "[t]here exists on that date, however, no certainty that the child will live for the duration of the support order or that the court issuing the order will not modify it as to future installments sometime prior to its termination." Id. at 116 (citation omitted). Once the amount is "fixed and unalterable," there is no reason for it not to be subject to the same strictures as other judgments. More recently, the Supreme Court of Ohio affirmed its Smith decision. Estate of Mason, 849 N.E.2d 998 (Ohio 2006). Thus, once a support order is reduced to a fixed judgment, that judgment is subject to dormancy and revivor.

### 2. Because the date the award became due was not known, it was necessary to reduce the award to a judgment to execute on it.

Plaintiff argues that the above holdings require a domestic relations award to be reduced to a lump sum judgment before it can be subject to dormancy and revivor. Because Debtor never reduced the amount owed to a lump sum judgment, Plaintiff contends she still has the right to recover under the divorce decree. But Plaintiff's order is not for support, it is a property settlement. Were this a case involving on-going support or alimony, the court would easily accept Plaintiff's argument. Then, "such order must be reduced to a lump-sum judgment as to unpaid and delinquent installments before an execution may be lawfully levied thereunder." Roach v. Roach, 132 N.E.2d 742, syllabus (Ohio 1956).

At first light, the facts appear easily distinguishable from Smith. Debtor was awarded a specific amount, $25,000.00, at 8% interest. Since it was not a support award that could fluctuate in the future based on unknown factors, there is an argument that Smith does not apply. However, one factor makes it analogous: from the face of the divorce decree, you cannot ascertain the amount due because it is conditioned on a future triggering condition. To calculate the amount due, you need to know which triggering factor applies and when it occurred. For this reason, Plaintiff's lump sum judgment argument is creditable for this property settlement.

### 3. Since the obligation was not reduced to a lump sum judgment, dormancy and revivor statutes do not apply.

Since Plaintiff did not get a lump sum judgment, the question is whether Defendant benefits from the length of time Plaintiff failed to take action? Using Smith as guidance, the court finds arguments supporting both sides.

In Smith, the parties divorced in 1936 and the husband was ordered to pay $7.00 per week in child support until the child was eighteen, which occurred in 1942. In 1956, the wife sought a lump sum judgment to execute on the amounts owed. The court considered

> whether a certain lapse of time allowed to expire by the payee
> of an installment support order before taking active steps to
> obtain the "lump-sum judgment" . . . constitutes behavior on
> the part of such payee by which he forfeits his right to obtain

> such "lump-sum judgment" as to unpaid and delinquent install-
> ments.

Smith, 156 N.E. 2d at 116. The court recognized that when the child reached 18, the amount due was "mathematically determinable," became "fixed and unalterable," and the wife could have obtained a lump-sum judgment. Id. at 117. It further opined that until the amount is ascertainable, it is not a "cause of action" subject to a statute of limitations. Per the court, "although a judgment for installment payments, rendered by a court of this state, is a good *ground* of action, its rendition is *not the accruing cause of action* within the meaning of [dormancy and revivor statutes]." Id. at 118 (emphasis original).

It would appear to follow that once the cause of action accrues, the statute of limitations applies and the Ohio Supreme Court suggested as much:

> [i]f, then a party may ever be precluded from having such arrearages reduced to a 'lump-sum judgment' by 'sleeping on his rights,' the date the rights of the parties are finally fixed, as to the unalterable amount remaining due on the order, must be considered the date upon which the 'slumber' commenced.
>
> [Additionally,] the uncertainty of the amount of the judgment pre-cludes an application thereto of the time limitations in the dormancy and revivor statutes . . . *at least* before the rights of the parties with respect to the unalterable amount due on the order are finally fixed.
>
> \*    \*    \*
>
> Even though [the court] loses custodial jurisdiction of a minor upon his attainment of majority, it nevertheless retains jurisdiction to enforce payment of the money judgment beyond that date . . . provided the holder of the judgment does not allow it to become irrevocably dormant."

Id. at 117-18 (emphasis original).

The total of the above strongly inclines toward Defendant. Defendant's obligation to pay triggered in 1991, meaning Plaintiff's cause of action accrued that year and it became subject to statutes of limitations, including dormancy and revivor. Because Plaintiff never took action, and the time to act has passed, the obligation is now uncollectible. However, the Smith court did not find for the husband, it found for the wife, even after outlining the above and considering her inaction and his laches defense.

Three considerations influenced the court's decision in Smith. First, early in the opinion, the court cited another Ohio Supreme Court case that found "as to domestic judgments, an action upon a judgment of a court of this state may be brought at any time within 21 years."

6

Id. at 118 (citing Graham v. Simon, 81 N.E. 170, syllabus (Ohio 1907)). In Smith, the wife's action was brought after fourteen years, within the noted statute of limitations. Second, the court emphasized the equitable interest at stake: "Defendant was instrumental in bringing into the world the child for whom the benefit of support money was intended . . . knew of the existence of his obligation . . . [and] the mere fact he failed to meet such obligation does not mean he was excused therefrom." Smith, 156 N.E.2d at 120. Third, the court found that the husband was not materially prejudiced by his ex-wife's delay in seeking a lump-sum judgment.[1] Since Plaintiff is not within the applicable dormancy revivor time frames, and the award does not involve the exact same considerations as child support, and Defendant has cited no material non-financial prejudice, it is easy to argue case is distinguishable.

The counter argument is that, regardless of the above, the Ohio Supreme Court did not, and has not, applied dormancy and revivor to domestic relations obligations that have not been reduced to lump sum judgments. Moreover, the theory that judgments from domestic relations courts are not typical judgments remains intact. Matter of Essig, 1995 WL 600519, *3 (Ohio Ct. App. 1995) (unreported) (finding "[t]he parties' property settlement is not dormant since it does not constitute a judgment for money damages . . . [but] arises out of an equitable domestic order which does not go stale."); see also Lemert v. Lemert, 74 N.E. 194 (Ohio 1905).

This distinction is also readily seen in the line of cases that distinguish jail time as a contempt punishment for nonpayment of support on the premise that "an obligation to pay child support is not a debt . . . [it] arises by operation of law and is a personal duty owed to the former spouse, the child, and society in general." Gibson v. Gibson, 2012 WL 952231, *3 (Ohio. Ct. App. 2012) (citing Cramer v. Petrie, 637 N.E.2d 882, 886 (Ohio 1994)). Once reduced to a lump sum judgment, however, the nature of the obligation changes and it is thereafter unconstitutional to use imprisonment against the obligor. Gibson at *5 (citing Sizemore v. Sizemore, 2010 WL 1270362 (Ohio Ct. App. 2010); Robinson v. Robinson, 1996 WL 502141 (Ohio Ct. App. 1996)). Thus, there is clear support under Ohio law to draw a line between domestic relations orders that have been reduced to judgment and those that have not.

Looking beyond the law, multiple policies are in play. On one side is the equitable policy of fairly dividing assets in a marriage termination and enforcing that division. This not only protects the obligee but also promotes the sanctity of court decisions and confidence in the judicial system. The other side considers whether an obligor should be endlessly tied to a debt or whether there comes a point in time that inaction by the obligee excuses an obligor's performance. The latter is an exception to the former policy. Unfortunately, the exception to the general policy has little support in Ohio law.

Upon full consideration of Ohio law and the underlying policies, the court finds that the collection of the property settlement award set forth in the domestic relations decree is not barred by the dormancy and revivor statutes.

---

1 Financial prejudice in and of itself is not material prejudice. Smith, 156 N.E.2nd 113, 120.

### 4. Although laches does not apply to the original award, it may apply to the growth.

A very recent decision from the Fifth District Court of Appeals offers a compromise that balances the competing policies. Toki v. Toki, 2020 WL 261246 (Ohio Ct. App. 2020). The appellate court applied laches to bar collection of interest during the period of the wife's inaction.

In 1994, the wife was awarded a portion of her husband's pension, payable when he retired. He retired in 2002 and paid her $20,000.00, less than half the amount owed. In 2017, the wife filed contempt action and moved to construe the decree. The trial court found both barred by laches. The Fifth District agreed as to the contempt charge but remanded on the latter, stating "[i]t would seem while laches does not bar collection of the original definite amount set forth in the 1994 judgment, it is arguable if it is available if the formula is applied to all retirement benefits Appellee has already received and/or will receive in the future." It remanded. Following remand, the trial court found laches was a defense. The wife appealed and the Fifth District determined

> Appellee's original legal obligation to Appellant as set forth in the trial court's December 1, 1994 Entry is not barred by laches. To find otherwise would not be reflective of the trial court's intent. Pursuant to the decree, Appellant was awarded earned interest on the $53,531.48 as of the date of Appellee's retirement. Accordingly, Appellant is entitled to $53,531.48 plus the annual legal rate of simple interest on $53,531.48, not compounded, less the $20,000.00 payment. Appellant is not entitled to any potential accrual of interest after 2002, as the same is barred by laches.
>
> Our ruling today merely calls upon Appellee to comply with an obligation imposed upon him by an existing court order. While Appellee may have changed his financial position in reliance upon his belief Appellant would not seek to enforce the order, this prejudice is insufficient as a matter of law to support a defense of laches.

Id. at *3.

Toki maintains the integrity of the domestic relations court order. It requires Defendant to meet the obligation imposed on him. And it does not reward Plaintiff for Debtor's failure to timely act to collect the debt for twenty-eight years. The court therefore adopts Toki and finds that Plaintiff may collect the original $25,000.00 award. What else she may be entitled to, if anything, remains to be determined.

8

19-06015-rk    Doc 42    FILED 02/24/20    ENTERED 02/24/20 15:13:56    Page 8 of 10

### a. The court will grant the motion to supplement the record because it relates to laches.

Under Ohio law, to successfully assert a laches defense, Defendant must prove, by a preponderance of the evidence, "(1) unreasonable delay or lapse of time in asserting a right; (2) absence of excuse for the delay; (3) knowledge, actual or constructive, of the injury or wrong; and (4) prejudice to the other party." Toki at *2 (citing Myers v. City of Columbus, 646 N.E.2d 173 (Ohio 1995)). The first and third elements have been established. Debtor was entitled to payout of the property settlement in 1991 and did nothing for twenty-eight years. This was an unreasonable delay. Only when she filed bankruptcy, and the trustee stepped into her shoes, was any action taken. Debtor had actual knowledge that she was entitled to the $25,000.00 property settlement awarded by the divorce court, satisfying the third element.

As for the second element, Plaintiff recently filed a motion to supplement the record with facts that speak directly to this element. The decision to supplement the record is left to the discretion of the court. In re McCarthy, 488 B.R. 814, 828-29 (B.A.P. 1st Cir. 2013) (citing Lifemark Hosps., Inc. v. Liljeberg Enters., Inc. (In re Liljeberg Enters., Inc.), 304 F.3d 410, 433 n. 43 (5th Cir. 2002) (citations omitted)). The court will grant the motion over Defendant's objection. Neither the court nor the parties foresaw the Toki decision and the potential role laches may play. The court will provide both parties the opportunity to argue, and counter, the remaining two elements of the laches defense.

### **CONCLUSION**

In 1981, Debtor was awarded $25,000.00 in her divorce with Defendant. The domestic relations court gave her a lien on Defendant's corporate stock, thereby creating a judicial lien in her favor. The court did not transfer ownership of the stock to Debtor.

The amount due was payable upon the earlier of one of three events and became due in 1991 when Defendant's alimony and support obligations ended. Because it was not clear from the face of the divorce decree when the amount became due and payable, Debtor needed to reduce the amount to a lump sum judgment to be able to execute on it, similar to a child support award. Domestic relations orders that must be reduced to judgment are not subject to the dormancy and revivor statutes until they are reduced to judgment. Since Debtor did not reduce the amount to judgment, Plaintiff is entitled to turnover of the original $25,000.00 award. However, it is unclear whether Plaintiff is entitled to accumulated interest on the award or whether the interest is barred by laches. The court will provide an opportunity for further input on this issue.

An order in accordance with this opinion will be issued immediately.

#     #     #

**Service List:**

Michael J. Moran
Gibson & Moran
PO Box 535
234 Portage Trail
Cuyahoga Falls, OH 44222

James M. McHugh
Tzangas Plakas Mannos Ltd
220 Market Avenue, South
Eighth Floor
Canton, OH 44702